IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND and )
HOWARD McDOUGALL, trustee, )
)
Plaintiffs, )
) Civil Action No.: 05 C 5908
v. )
) Suzanne B. Conlon, Judge
PIONEER RANCH LIMITED PARTNERSHIP, a )
Michigan limited partnership, and ROBERT S. )
WHITING, an individual, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund and its trustee, Howard McDougall, sued Pioneer Ranch Limited Partnership and Robert S. Whiting for withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* The parties cross-move for summary judgment. For the reasons set forth below, plaintiffs' motion for summary judgment is granted, and defendants' cross-motion is denied.

### BACKGROUND

The following facts are undisputed unless otherwise noted. This case arises from Whiting Distribution Services, Inc.'s withdrawal from the pension fund in 2003. During all relevant times, Whiting controlled Whiting Distribution, a Michigan-based trucking company. Defs. Facts at ¶ 17; Pls. Facts at ¶ 6. Under its union collective bargaining agreements, Whiting Distribution was obligated to contribute to the pension fund. *Id.* at ¶ 7. Whiting Distribution fulfilled this obligation

until December 2003, when it went into bankruptcy. *Id.* at ¶ 8. As a result of the bankruptcy, Whiting Distribution was considered withdrawn from the pension fund, incurring a $3,708,184.81 withdrawal liability. *Id.* at ¶ 9.

As a multiemployer pension plan, the pension fund may recover Whiting Distribution's withdrawal liability from any trade or business under Whiting's control. *See id.* at ¶ 21. The pension fund determined Whiting controlled the Pioneer Ranch, and that the Pioneer Ranch was a trade or business. *See id.* Pursuant to the MPPAA, the pension fund sent a notice and demand for payment to the Pioneer Ranch. *Id.* After receiving the notice, the Pioneer Ranch did not make any payments as requested. *Id.* at ¶ 24. Nor did it initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1). *Id.* at ¶ 25. Pioneer Ranch's inaction prompted the pension fund to file this case.

Whether the Pioneer Ranch constituted a trade or business under the MPPAA is at the heart of this case. The Pioneer Ranch maintained property located in Aloha Township, Michigan. Defs. Facts at ¶ 11. Whiting acquired the ranch property between 1971 and 1982. *Id.* at ¶¶ 11, 29. He raised cattle and other livestock. *Id.* at ¶ 16. Whiting and his wife, together with their four adult children, formed the Pioneer Ranch as a limited partnership in 1993. Defs. Facts at ¶ 31, Ex. U at 11. Whiting and his wife were general partners holding the majority of shares; their children were limited partners. Defs. Facts at ¶¶ 34-35; Pls. Facts ¶¶ 15-20. The partnership agreement stated that the Pioneer Ranch was to engage in the ranching business for profit. *Id.* at ¶ 26; Defs. Facts Ex. U at 2-3. Since its formation, the partnership employed David McCormick as a manager and provided him with a monthly salary, intermittent health insurance, and retirement benefits. *Id.* Ex. H at 12:8-13:22; Pls. Facts at ¶¶ 56, 59-61. In addition, the partnership employed three short-term workers and maintained a workers' compensation policy for all employees. *Id.* at ¶¶ 63-66. Over the years, the

partnership made several improvements to the ranch in furtherance of the ranching business, including a fence and corrals. *Id.* at ¶¶ 70-72. But the ranching business was not profitable. While reporting income from livestock sales, the partnership's tax returns between 1994 and 2003 claimed net losses over $50,000 each year. *Id.* at ¶¶ 34-53; Defs. Facts Exs. K-T. With each federal tax return, the partnership filed a Schedule F (Profit or Loss from Farming) claiming farm expenses in depreciation, feed, fuel, insurance, and labor. *Id.*

Defendants claim the Pioneer Ranch was set up not as a business, but as an estate planning device, and that the ranch was intended to be nothing more than a vacation home. Defs. Facts at ¶¶ 8, 43-44, 46. To utilize the partnership as an estate planning device, Whiting and his wife conveyed shares of the partnership to their children each year. *E.g.*, Defs. Facts Ex. B at ¶¶ 14-15. According to defendants, the Whitings never expected a profit from the partnership. Defs. Facts at ¶¶ 37, 39-40. They installed a shuffleboard court, a tennis court, and a vinyl fence that were unrelated to a ranching business. *Id.* at ¶ 49. They also acquired property that would never be suitable for ranching. Defs. Facts Ex. H at 16:24-25, 17:1-8. They raised livestock simply because they enjoyed being around animal and observing farm activities. Defs. Facts at ¶ 50.

Based on the foregoing facts, the parties vigorously dispute whether the Pioneer Ranch constituted a trade or business within the meaning of 29 U.S.C. § 1301(b)(1). On cross-motions for summary judgment, they submit affidavits and deposition transcripts of McCormick and the Whitings' four children, as well as volumes of exhibits, including the Pioneer Ranch's formation agreement and tax returns.

## DISCUSSION

### I. Summary Judgment Standard

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co.*, 427 F.3d at 1041. Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Withdrawal Liability

Under ERISA and the MPPAA, an employer withdrawing from a multiemployer pension plan is liable for its share of vested, unfunded benefits. 29 U.S.C. §§ 1381(a), 1383. To collect "withdrawal liability," *id.* § 1301(a)(12), a pension fund must serve a withdrawing employer with a notice and demand for payment. *Id.* § 1399(b). The withdrawing employer may request the pension fund to recalculate the payment demand. *Id.* If dissatisfied with the recalculation, the employer must initiate arbitration to challenge its liability. *Id.* § 1401(a)(1). Failure to initiate arbitration bars an employer from litigating its liability. *See id.*; *Robbins v. Admiral Merchants*

*Motor Freight, Inc.*, 846 F.2d 1054, 1055 (7th Cir. 1988) ("Congress clearly intended all withdrawal liability disputes . . . to be arbitrated").

ERISA extends withdrawal liability to all "trades or businesses (whether or not incorporated) which are under common control" with a withdrawing employer. 29 U.S.C. § 1301(b)(1). Accordingly, an entity that is (1) a "trade or business" and (2) under "common control" with a withdrawing employer is jointly and severally liable for the withdrawing employer's liability. *Id.*; *Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001).

Whiting Distribution and the Pioneer Ranch were under Whiting's common control. Whiting owned at least 80% of Whiting Distribution's stock. Pls. Facts at ¶ 6. Together with his wife, he owned over 50% of the Pioneer Ranch. *Id.* at ¶¶ 15-16. Thus, he controlled both Whiting Distribution and the Pioneer Ranch. *See* 26 C.F.R. §§ 1.414(c)-2(c)(1), 1.414(c)-2(c)(2)(iii), 1.414(c)-4(b)(5). Defendants do not dispute common control, but vehemently deny that the Pioneer Ranch was a trade or business.

## II. Trade or Business

### A. Waiver

Plaintiffs contend that because defendants failed to initiate arbitration, they waived the right to challenge their purported withdrawal liability. Plaintiffs rely on 29 U.S.C. § 1401 requiring all "dispute[s] between an *employer* and . . . a multiemployer plan . . . be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis supplied). This requirement, however, "presupposes a determination that the dispute is with an 'employer.'" *Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372 (7th Cir. 1992). Thus, determination of whether

defendants constitute an "employer" falls outside the arbitration requirement. *See Central States, Southeast & Southwest Areas Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 n.1 (7th Cir. 1992) ("[a]lthough [defendant] failed to request arbitration, this dispute is properly before the court because [he] argues that he was not an 'employer'").

Relying on *dicta* from *Slotky*, plaintiffs urge this court to depart from *Personnel*. *Slotky* advised that a defendant who suspects he might be an "employer" under the MPPAA should timely commence arbitration, rather than "tak[ing] his chances on the court's deciding the issue in his favor." *Slotky*, 956 F.2d at 1373. Despite this *dictum*, *Slotky* holds that the issue whether a defendant is an employer cannot be within exclusive arbitral jurisdiction. *Id.* (citing cases). Interpreting *Slotky*, this court has repeatedly rejected the approach urged by plaintiffs, and held that failure to initiate arbitration does not preclude judicial determination of whether a defendant is an employer within the meaning of 29 U.S.C. § 1301(b)(1). *Central States, Southeast & Southwest Areas Pension Fund v. Progressive Driver Servs., Inc.*, 940 F. Supp. 1311, 1314 (N.D. Ill. 1996) (Nordberg, J.); *see also Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. El Paso CGP Co.*, No. 04 C 7872, 2006 WL 1037152, at *5 (N.D. Ill. Apr. 17, 2006) (Coar, J.) ("the question of whether an entity was ever an MPPAA employer is for the court to determine") (citing cases). Accordingly, plaintiffs' waiver argument is without merit.

In addition to *Slotky*, plaintiffs rely on two distinguishable cases: *Admiral Merchants*, 846 F.2d at 105, and *Central States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887 (7th Cir. 1992). Both *Admiral Merchants* and *Ditello* hold that employers' failure to timely initiate arbitration bars judicial determination on withdrawal liability. *Id.* at 893; *Admiral Merchants*, 846 F.2d at 105. But neither decision applies the bar to the issue of employer status. In fact, *Ditello*

6

implicitly rejected plaintiffs' proposition by ruling on the issue of employer status in the absence of timely arbitration. *Ditello*, 974 F.2d at 890-92. Thus, plaintiffs' reliance on *Admiral Merchants* and *Ditello* is misplaced.

Because plaintiffs' waiver argument lacks merit, the question whether the Pioneer Ranch is an "employer" within the meaning of 29 U.S.C. § 1301(b)(1) is properly before the court. As discussed above, to be an employer, the Pioneer Ranch must be a trade or business under common control with Whiting Distribution. Because defendants do not dispute common control, the only disputed issue is whether the Pioneer Ranch is a trade or business.

### B. The *Groetzinger* Test

The test for what constitutes a trade or business under 29 U.S.C. § 1301(b)(1) is borrowed from *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23 (1987), a decision interpreting "trade or business" under the Internal Revenue Code. *Fulkerson*, 238 F.3d at 895. To be a trade or business under *Groetzinger*, the Pioneer Ranch must engage in activities: (1) for the primary purpose of income or profit; and (2) with continuity and regularity. *Groetzinger*, 480 U.S. at 35. Application of *Groetzinger* requires an examination of the facts of each case. *Id.* at 36. Accordingly, the court may consider: (1) the Whitings' intent in founding the Pioneer Ranch; (2) the Pioneer Ranch's tax treatment; and (3) the Pioneer Ranch's legal form and activities. *Personnel*, 974 F.2d at 794-95. None of these factors are dispositive. *Id.*

### C. Continuity and Regularity

The Pioneer Ranch clearly engaged in ranching activities with continuity and regularity. Between 1994 and 2003, the Pioneer Ranch raised livestock and generated income from livestock sales each year. Defs. Facts at ¶ 33. The partnership filed income tax returns for nine consecutive

7

years. *See* Defs. Facts Exs. K-T. At all relevant times, the partnership paid a monthly salary to at least one employee. Defs. Facts at ¶¶ 24-25, Ex. H at 12:2-3. The partnership periodically acquired new property and made improvements on existing property. Pls. Facts at ¶¶ 69-72. The partnership's activities, conducted with regularity for nine years, satisfy the requirement of continuity and regularity. *Personnel*, 974 F.2d at 794-95 (finding continuity and regularity where defendant bought and sold several parcels of real property each year for four years); *see also Central States, Southeast & Southwest Areas Pension Fund v. Neiman*, 285 F.3d 587, 594-95 (7th Cir. 2002) (finding continuity and regularity where defendant made monthly payments of management fees and filed tax returns for two years); *cf. Fulkerson*, 238 F.3d at 893 (finding no regularity where defendant bought three parcels of property in ten years).

### D. Income or Profit

Documentary evidence conclusively establishes that the Pioneer Ranch operated a ranching business designed to produce income or profit. The Whitings' choice to form a limited partnership signifies their intention to set up a business. *Fulkerson*, 238 F.3d at 895 (a "formally organized business organization" strongly suggests that it is a "trade or business"). More importantly, the Pioneer Ranch's formation agreement stated that the partnership was to engage in the ranching business for profit:

> 2.5 Purpose of Business
>
> The purpose[s] for which the Partnership has been formed . . . are as follows:
>
> (a) acquiring and holding certain real property located in the Township of Aloha, Cheboygan County, Michigan, heretofore owned and managed as a beef and cattle farm by the General Partners . . . ;
> (b) acquiring additional real and personal property to be used in . . . *the business of farming, ranching* and any agricultural pursuit or undertaking; and

8

(c) doing any and all things . . . to *protect and benefit the Partnership*.

Defs. Ex. U at 2-3 (emphasis supplied). This unambiguous statement evinces the Whitings' intention to derive profit from the Pioneer Ranch. Consistent with its stated purpose, the partnership improved and expanded the ranch's property. Pls. Facts at ¶¶ 69-72. In addition, the partnership employed a full-time manager and three short-term workers to maintain the ranch and to raise livestock. *Id.* at ¶¶ 34-53, 56-65. The livestock sales generated an annual income of over $20,000 between 1994 and 2003. Defs. Facts Exs. K-T. These facts compel the conclusion that the Pioneer Ranch was a trade or business. *See Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Kelly*, No. 95 C 501, 1996 WL 507258, at *9 (N.D. Ill. Sept. 4, 1996) (Coar, J.) (leasing a ranch constitutes a trade or business).

The Pioneer Ranch's tax returns from 1994 through 2003 further show the partnership operated as a trade or business. For instance, the partnership filed a Michigan Single Business Tax Annual Return and a U.S. Partnership Return of Income in 1997. Pls. Facts Ex. D at ¶¶ 2-3. In both returns, the partnership declared an income of $39,385 from livestock sales and expenses of $142,319. *See generally* Defs. Facts Ex. N; Pls. Facts Ex. D. In Schedule F of the federal return, the partnership listed in detail its business expenses: casual labor, farm maintenance, telephone expenses, livestock purchase, and meat processing expenses. *Id.* (Form 165 Schedule F Statement 6). In addition, Whiting and his wife each reported a loss of $50,956. *Id.* (Form 165 Schedule K-1). In a similar manner, the partnership filed federal and state tax returns for nine years. *See* Defs. Facts Exs. K-T. These tax returns are strong evidence that the Pioneer Ranch constituted a trade or business. *Personnel*, 974 F.2d at 795. In *Kelly*, the tax treatment of a ranch lease gave rise to a finding of "trade or business." 1996 WL 507258, at *9. Kelly inherited a ranch and leased it to a

rancher in exchange for a share of the proceeds earned through livestock sales. *Id.* Like the Pioneer Ranch, he filed Schedule Fs (Profit or Loss from Farming) claiming losses. *Id.* Based on the tax returns, this court concluded "that [Kelly] treated the ranch as a 'trade or business' designed to produce income." *Id.* The same conclusion is inescapable here.

The Pioneer Ranch's employment practices also shed light on its business purpose. Not only did the partnership employ a full-time manager and three short-term workers, but it also provided health insurance, workers' compensation, and retirement benefits for its employees. Pls. Facts at ¶¶ 56-66. The continuous, sophisticated employment practices undercut any assertion that the partnership was set up as an estate planning device or for personal enjoyment. *See Groetzinger*, 480 U.S. at 35 (gambling activities requiring skills are not a hobby, but a trade or business); *cf. Central States, Southeast & Southwest Areas Pension Fund v. White*, 258 F.3d 636, 643 (7th Cir. 2001) (leasing garage apartments from one's own residence is akin to personal investment and therefore does not constitute a trade or business). Undisputed documentary evidence – from the Pioneer Ranch's formation agreement, its tax returns, to its employment practices – firmly establishes that it operated as a trade or business. *Personnel*, 974 F.2d at 795.

### III.   Issues of Material Fact

Based on the documentary evidence, plaintiffs are entitled to summary judgment unless defendants raise a genuine issue of material fact as to whether the Pioneer Ranch constituted a trade or business. *See* Fed. R. Civ. P. 56(e). Defendants argue the Pioneer Ranch was set up as an estate planning device and purely for personal enjoyment, relying chiefly on the affidavits and deposition testimony of the Whitings' children. *See* Defs. Facts Exs. F-J. As discussed below, however, defendants' evidence fails to give rise to an issue of material fact.

10

The Whitings' four children, as limited partners of the Pioneer Ranch, testified that neither they nor their parents ever intended the Pioneer Ranch to be a business. *E.g.*, Defs. Facts Ex. F at 22:15-25. Their self-serving assertion of intent, however, cannot clear the evidentiary hurdle posed by the Pioneer Ranch's stated purpose in the partnership agreement. *Kelly*, 1996 WL 507258, at *9 (granting summary judgment to plaintiffs because a "self-serving statement of intent is not probative of whether an enterprise amounts to a 'trade or business'") (citing cases). Nor can their testimony cast doubt on a finding supported by ample documentary evidence of the Pioneer Ranch's income-generating operation. *See id.* ("defendant must point to objective evidence that he did not intend to create a business). They further testified the ranch served only as a vacation home and an estate planning device, and that livestock was raised solely for personal enjoyment. *E.g.*, Defs. Facts Ex. G at 12:3-14. Consistent with the purported recreational purposes, they installed a trout pond, a shuffleboard court, a tennis court, and a vinyl fence. *See* Defs. Facts at ¶ 49, Ex. H at 16:20-17:25. Viewed in the most favorable light, their testimony shows the Whitings derived incidental personal benefits from the Pioneer Ranch. Defendants fail to cite any legal authority for the proposition that evidence of incidental personal benefits precludes a finding of trade or business. Where, as here, documentary evidence conclusively establishes defendants operated a trade or business, summary judgment is appropriate. *Personnel*, 974 F.2d at 795 (granting summary judgment for pension fund because defendant's tax treatment of his leasing activities provided "strong evidence" that he operated a trade or business).

Arguing the contrary, defendants cite two distinguishable cases: *Fulkerson*, 238 F.3d at 891, and *White*, 258 F.3d at 636. In both *Fulkerson* and *White*, defendants engaged in real estate investments requiring little more than depositing checks and filing tax returns. *Fulkerson*, 238 F.3d

at 896 (defendant "never spent more than five hours in a year dealing with the leases"); *White*, 258 F.3d at 643 (defendants' performance of routine upkeep on their property is legally insignificant). In contrast, the Pioneer Ranch raised and sold livestock for nine years, and its operation required one full time manager and three short-term workers. Defs. Facts at ¶¶ 16, 33; Pls. Facts at ¶¶ 56-66. Unlike the home-office operations in *Fulkerson* and *White*, the Pioneer Ranch was formally organized as a partnership. *See* Defs. Facts Ex. U. Accordingly, *Fulkerson* and *White* are inapplicable.

Defendants argue that the Pioneer Ranch was not a trade or business under the MPPAA because it was not designed to produce profit or to evade withdrawal liability. This argument lacks merit because the MPPAA "makes no exemption from withdrawal liability for trades or businesses operating at a loss." *Central States, Southeast & Southwest Areas Pension Fund v. Koder*, 969 F.2d 451, 454 (7th Cir. 1992). Nor is withdrawal liability imposed only on businesses designed to fractionalize a withdrawing employer's assets. *See, e.g., Neiman*, 285 F.3d at 596 ("an economic nexus between businesses under common control need not exist to impose withdrawal liability"). In fact, business owners like Whiting have long been warned to "take extra caution in engaging in real estate and other personal investment activities," in order to stay clear of the MPPAA's broad reach. *White*, 258 F.3d at 644. Because defendants fail to raise an issue of material fact with respect to whether the Pioneer Ranch constituted a trade or business, they cannot avoid summary judgment in plaintiffs' favor.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is granted, and defendants' cross-motion is denied. Summary judgment is entered for plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, and against defendants Pioneer Ranch Limited Partnership and Robert S. Whiting.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

July 20, 2006